IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| JUDY GARCIA-CLARA<br>Plaintiff<br>vs<br>AIG INSURANCE COMPANY PUERTO RICO; AMERICAN INTERNATIONAL GROUP, INC.; FRANCISCO DIAZ; JUAN SEGUI; ZENAIDA FIGUEROA; GUSTAVO SARABIA; MAYRA AYALA; INSURANCE COMPANY XYZ; JOHN & JANE DOE<br>Defendants | CIVIL 15-1784CCC |

**OPINION AND ORDER**

On June 12, 2015, plaintiff Judy García-Clara filed suit against defendants AIG Insurance Company, Puerto Rico; American International Group, Inc.; Francisco Díaz, Juan Seguí, Zenaida Figueroa, Gustavo Sarabia, and Mayra Ayala, under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C.A. 621 et seq.  Related supplemental state law claims were also filed under Puerto Rico Act No. 100 of June 30, 1959, P.R. Laws Ann. Tit. 29, 16 et seq. ("Act 100"); Act No. 80 of May 30, 197, P.R. Laws Ann. Tit. 29, 185a et seq. ("Act 80") and Articles 1802 and 1803 of the Civil Code of Puerto Rico, 31 L.P.R.A. sec. 5141, 5142.

Plaintiff alleges that, on October 31, 2014, "following a pattern of discriminatory actions and under the pretext of a global reorganization, defendants . . . unlawfully terminated [her]" and "systematically terminated all older employees at their Puerto Rico branch and offered them severance packages."  Plaintiff identifies her employer at paragraph 26 of the Complaint as co-defendant AIG Insurance Company Puerto Rico (AIGPR).

CIVIL 15-1784CCC                                    2

Before the Court now is defendants' Motion to Compel Arbitration filed on August 10, 2015 (**D.E. 13**), plaintiff's opposition (D.E. **19**), and defendants' reply (D.E. **22**). Defendants invoke the dispute resolution program, called the "AIG Employment Dispute Resolution ("EDR") program. Section 3A of that program reads:

> This Program applies to and binds the Company, each Employee who is in the employment of the Company who did not decline coverage during the applicable opt out period, who commences employment or makes application for employment with this Company on or any time after the Effective Date of this Program, and the heirs, beneficiaries and assigns of any such persons.

Section 4A mandates that "[a]ll disputes not otherwise settled by the Parties shall be finally and conclusively resolved through arbitration under the Program, which provides the exclusive, final and binding method by which Disputes are resolved."

As a preliminary matter, the Court notes that arbitration of claims under the ADEA are not precluded by the Act. Although not all statutory claims are appropriate for arbitration, "having made the bargain to arbitrate, the party should be held to it unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue." Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 628 (1985). As relevant to this case, the Supreme Court has conclusively held that Congress did not intend to preclude arbitration when it enacted the ADEA. Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 35 (1991).

The standard governing a petition to compel arbitration is well established. Where there is an agreement to arbitrate, the FAA reflects a strong federal policy favoring arbitration. HIM Portland, LLC v. DeVito Builders, Inc., 317 F.3d 41, 43 (1st Cir. 2003). Federal law mandates rigorous enforcement of agreements to arbitrate, Perry v. Thomas, 482 U.S. 483,

CIVIL 15-1784CCC                               3

490 (1987).  The Federal Arbitration Act "creates a body of federal substantive law establishing and regulating the duty to honor an agreement to arbitrate." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 25, n. 32, 103 S.Ct. 927, at 942, n. 32 (1983).

Arbitration is a matter of contract law and a party can only be made to submit to arbitration those disputes which he has agreed so to submit. Painewebber Inc. v. Elahi, 87 F.3d 589, 594 (1st Cir. 1996) (citing AT&T Technologies, Inc. v. Communications Workers of Am., 475 U.S. 643, 106 S.Ct. 1415, 89 L.Ed. 2d 648 (1986)).  The question of arbitrability—whether the parties agreed to arbitrate a particular dispute—is an issue for judicial determination.  Id. at 649, 106 S.Ct. at 1418–1419.  "Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." Id.

A party to an arbitration agreement aggrieved by the other party's refusal to comply with the provisions of such agreement may request that the Court compel arbitration.  See 9 U.S.C.A. Section 3.  In order to obtain an order compelling arbitration the party seeking such relief must establish the following four elements: "[(1)] that a valid agreement to arbitrate exists, [(2)] that the movant is entitled to invoke the arbitration clause, [(3)] that the other party is bound by that clause, and [(4)] that the claim asserted comes within the clause's scope." Intergen N.V. v. Grina, 344 F.3d 134, 142 (1st Cir. 2003).

Defendants aver that defendant AIG sent out an initial email on April 29, 2013, that gave notice to plaintiff of the new EDR program and advised her of "the opportunity to elect to opt out."  They also observe that the email "clearly expressed that if the employee did not opt out by the June 30, 2013 deadline,

CIVIL 15-1784CCC                                4

he/she would be included in the EDR program effective July 1, 2013." (D.E. 13, p. 3). Defendants further assert that on June 5, 2013, defendant AIG sent another email to plaintiff, a reminder email, advising her of the need to complete a training on EDR, and reminding her of the opt-out deadline of June 30, 2013. Id. Finally, that on September 19, 2013, she received an email confirming her enrollment in the program, and that she is shown as having completed the EDR training in a master report generated on December 16, 2013.

>Defendant AIG's first email reads, in full, as follows:
>
>Dear Colleagues:
>
>AIG is committed to maintaining a professional, discrimination-free environment where individuals are treated with dignity and respect, so we can all work together comfortably and productively. Our U.S. Employee Handbook describes how AIG maintains a fair process for employees to present and resolve complaints or concerns concerning work-related issues. Today, I am pleased to introduce you to expanded options of this process through the AIG Employment Dispute Resolution Program (EDR). Please visit Life & Career and Talent Connection* for further information about the AIG Employment Dispute Resolution Program, including the Program brochure and plan documents.
>
>You have the option to decline participation in EDR. To exercise that option, you must complete the training module on Talent Connection* then select the option "Decline to Participate" and submit no later than midnight Central Time on June 30, 2013.** If you do not opt out, you will be included in the EDR program effective July 1, 2013.
>
>I hope that none of our employees have a disagreement with the company concerning work-related issues. If you do however, the AIG Employment Dispute Resolution Program provides employees a fair, efficient and less costly way to resolve those differences.

Defendant AIG's second or reminder email reads, in full, as follows:

>Dear Colleagues,
>
>AIG is committed to maintaining a professional, discrimination-free environment where individuals are treated with dignity and respect, so we can all work together comfortably and productively. In this spirit, the company is making the AIG Employment Dispute

CIVIL 15-1784CCC                              5

>   Resolution Program available to employees. If you have reviewed the EDR materials already, you are aware of the benefits the program offers to you. If you have not reviewed the materials yet, please watch my video for an overview, then click on the following links.
>
>   -   Review the training module on Talent Connection* You will need to access the training by June 30, 2013, midnight Central Time if you wish to exercise your option to decline to participate in the EDR Program.
>
>   -   Read the materials on Life & Career,* including the AIG Employee Dispute Resolution Program brochure and plan documents.
>
>   We strive to ensure that our employees are heard and that work-related issues are addressed promptly. However, in those instances where an employee has a disagreement with the company regarding a workplace issue, the AIG Employment Dispute Resolution Program provides a fair and efficient way to resolve those differences.

The Court must determine as a matter essential to defendant's Motion to Compel Arbitration whether the employee was given explicit notice that all employment disputes including employment discrimination claims were subject to arbitration.  Defendant offers the declaration under penalty of perjury of Richard Joers ("Joers") (Exhibit 1 to Motion to Compel).  Joers was the head of Employee Relations Americas for AIG.  In his role as such, Joers oversaw the implementation of AIG's EDR program in 2013, including the communications that were sent to employees and trainings given to employees regarding the EDR program. Joers also reviewed and approved the EDR program content that was periodically posted for employees on AIG's intranet website.  Joers affirms that on April 29, 2013 AIG sent out an initial notification via email to all active eligible employees regarding the EDR program.  That email is included as an exhibit, as is a redacted list of recipients, including plaintiff's email address. Plaintiff does not dispute that the listed email is hers. Also affirmed by Joers and included as an exhibit is yet another email sent to

CIVIL 15-1784CCC                                6

employees who had received the initial email and had not yet completed the EDR training. This email advised them of the training requirement and the opt-out deadline of June 30, 2013. Finally, Joers affirms and includes a list of employees who completed the EDR training as of December 16, 2013, and plaintiff's name appears on that list.

Joers affirms in his affidavit that these communications were explicit in their coverage of the information pertinent to the Court's determination regarding plaintiff's awareness of the EDR Program. Joers' affidavit ends with the following statement: "I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment."

Plaintiff responds by objecting to portions of Joers' affidavit as containing hearsay, and by arguing that his affidavit contained conclusory statements and failed to establish personal knowledge. The Court overrules these objections. Joers was the head of Employee Relations America for AIG, and thus would have working knowledge of the program. He was also directly involved in the implementation, administration, and content development for the program. Furthermore, the witness need not be the person who actually prepared the record. Fed. R. Evid. 803(6) (the "business records exception") specifically provides that the requirements of the Rule be demonstrated by testimony of the custodian or other qualified witness, unless the source of information or the method of circumstances of preparation indicate lack of trustworthiness. United States v. Grossman, 614 F.2d 295, 297 (1st Cir. 1980). Plaintiff never even submitted her own affidavit or any evidence that she did not receive notification of the EDR Program. Nor did she deny that she received training regarding the EDR Program. Plaintiff never contested the authenticity of the emails, nor did

CIVIL 15-1784CCC                             7

she claim that they were not sent to her email address, nor did she deny that the email address in defendants' exhibits was hers.

Both emails, the initial one dated April 29, 2013 and the reminder of June 5, 2013, expressly advised the employees of the existence of the AIG Employment Dispute Resolution Program (EDR) and instructed them specifically to visit "Life & Career" and "Talent Connection" for information about the AIG Employee Dispute Resolution Program, including the program brochure and plan documents. The EDR materials were readily available to plaintiff and other employees to review. They were given a period of 60 days to decide whether to decline to participate in the EDR program. Exhibit 1H of D.E. 13 is the AIG EDR Program that was open to employees, to either join or reject, after reviewing its provisions. The Program description includes a section on "Definitions." Among them the term "Dispute" is defined as follows:

> E.   "Dispute" means any legal or equitable claim, demand or controversy, in tort, in contract, under statute, or alleging violation of any legal obligation, (i) between the Company and an Employee or any other person bound to resolve disputes under this Program; (ii) between Employees if in any way related to their employment with the Company; and (iii) asserted against a Third Party Beneficiary which relates to, arises from, concerns or involves in any way:
>
>    1.   the Program, the Description, or the Rules;
>
>    2.   the employment, reemployment, or application for employment of an Employee, including the terms, conditions, or termination of such employment and events that may occur after any such termination of employment;
>
>    3.   Non-ERISA covered employee benefits or incidents of employment with the Company;
>
>    4.   **any other matter related to the relationship between an Employee and the Company including, by way of example and without limitation, all claims or disputes arising out of the interpretation or enforcement of any duties, rights, or obligations of the Parties set forth in any employment agreement,**

CIVIL 15-1784CCC                          8

>    **all claims amounting to a common law tort, and all claims under any federal, state, or local human rights or employment rights statutes and regulations or wage and hour statutes and regulations, including, but not limited to Title VII of the 1964 Civil Rights Act, the Age Discrimination in Employment Act of 1967, the Rehabilitation Act of 1973, the Americans with Disabilities Act, the Family and Medical Leave Act, Title 42 U.S.C. Section 1981, the Civil Rights Act of 1991, the Fair Labor Standards Act, and any similar state or local statute or regulation, or any state or local retaliatory discharge statute or regulation, whether the basis for the dispute arises at the time of application for employment, during employment or as a consequence of the termination of employment or as a consequence of the Company's attempt to enforce an employment agreement provision after termination of employment**;
>
> 5.  any prior resolution or settlement of a Dispute between Parties subject to the Program; and
>
> 6.  any personal injury or death allegedly incurred in or about a Company workplace or on Company time (other than those that are compensable under applicable workers' compensation laws).

Emphasis ours.

This definition of "dispute" included in the AIG EDR program gives clear notice that arbitration was required as to "all claims or disputes arising out of the interpretation or enforcement of any duties, rights, or obligations of the Parties set forth in any employment agreement, all claims amounting to a common law tort, and all claims under any federal, state, or local human rights or employment rights statutes and regulations or wage and hour statutes and regulations, including, but not limited to Title VII of the 1964 Civil Rights Act, the Age Discrimination in Employment Act of 1967, the Rehabilitation Act of 1973, the Americans with Disabilities Act, the Family and Medical Leave Act, Title 42 U.S.C. Section 1981, the Civil Rights Act of 1991, the Fair Labor Standards Act,

CIVIL 15-1784CCC                                9

and any similar state or local statute or regulation, or any state or local retaliatory discharge statute or regulation . . ."

      We, therefore, find that plaintiff García-Clara knew of the existence of the EDR Program and also knew or should have known its contents for she was given actual notice of this program and had ready access to the Program itself. The Program's definition of "dispute" explicitly provided for arbitration of <u>all</u> claims and disputes arising out of the interpretation and enforcement of any employment agreement and gave her, as stated earlier, explicit notice that ADEA claims such as hers were subject to arbitration under the AIG EDR Program. As a matter of fact, the Program also gave her clear notice that all claims, both federal and state, under <u>any</u> employment rights statutes were subject to arbitration.

      This case is different from <u>Rosenberg v. Merrill Lynch</u>, 170 F.3d 1 (1st Cir. 1999). In <u>Rosenberg</u>, there was no evidence that Merrill Lynch had even provided plaintiff at any time with information which placed her on notice that any controversies arising out of her employment or termination required arbitration. The opposite has been shown in this case. The AIG EDR Program was a document made known to the plaintiff by her employer through emails received by her and the Program's provisions were readily available for her to review. During a period of 60 days after it was made available she could decide whether or not to participate in the EDR Program. She was expressly provided notice of the range of the claims that were subject to arbitration under the EDR Program. It was a broad spectrum of claims for, under the Program's definition of "dispute," arbitration covered "all claims or disputes arising out of the interpretation or enforcement of any duties, rights, or obligations of the Parties set forth in any employment agreement, all claims amounting to a common law

tort, and all claims under any federal, state, or local human rights or employment rights statutes and regulations or wage and hour statutes and regulations, including, but not limited to . . . the Age Discrimination in Employment Act of 1967," the statute underlying this action.  In Rosenberg, the responsibility for the deficient information was placed squarely upon the employer.  In this case, the employer's EDR Program defined by its own terms the range of claims subject to arbitration, including an ADEA claim, and that EDR Program was made readily available by the employer to plaintiff García-Clara for her to review and ponder, and subsequent to that for her to accept or reject, as she chose.

In sum, the evidence before the Court establishes that plaintiff received notice of the existence of the arbitration agreement, had access to its contents, which defined the range of claims subject to arbitration including an employment discrimination claim such as ADEA, and that she chose not to opt out of the arbitration agreement proposed by the company.  She, therefore, accepted the arbitration agreement (Exhibit 1H) and she is bound by it.

**CONCLUSION**

For the reasons stated, defendants' Motion to Compel Arbitration (**D.E. 13**) is GRANTED. Judgment dismissing this case, without prejudice, shall be entered.

SO ORDERED.

At San Juan, Puerto Rico, on March 29, 2016.

S/CARMEN CONSUELO CEREZO
United States District Judge